UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH


**JOHN J. AUTRY**
    Plaintiff

v.                                                                                 No. 5:07CV-00113-J

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant


**MAGISTRATE JUDGE'S REPORT**
**and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Stuart Peek. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 7 and 8, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on January 6, 2007, by administrative law judge (ALJ) William Reamon. In support of his decision denying Title XVI benefits, Judge Reamon entered the following numbered findings:

    1. The claimant has not engaged in substantial gainful activity since November 15, 2003, the alleged onset date (20 CFR 416.920(b) and 416.971 et seq.).

    2. The claimant has the following severe impairment: history of congenital hip dysplasia, status-post remote surgeries, with residual bilateral arthritis, and diabetes mellitus (20 CFR 416.920(c)). To the extent the claimant has a medically determinable depressive disorder, it is non-severe.

    3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a reduced range of light work activity. The claimant can lift and carry a maximum of 20 pounds occasionally and 10 pounds frequently and push/pull within these weights. The claimant can stand and/or walk a combined total of no more than two hours per day. He can sit without limitation, as long as he has the option to alternate between sitting and standing to relieve discomfort/pain. The claimant can never stoop, kneel, crouch or crawl. He can occasionally climb (stairs/ramps). He can never be exposed to moving/mechanical parts, electrical shock or exposed heights, but otherwise has no significant environmental limitations. He has no significant manipulative, visual, communicative or mental limitations.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on October 9, 1980 and was 23 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFRR 416.960(c) and 416.966).

10. The claimant has not been under a "disability," as defined in the Social Security Act, since July 29, 2005, the date the application was filed (20 CFR 416.920(g)).

(Administrative Record (AR), pp. 15-21).

## Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal

2

standards in reaching her decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant

number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). The focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

## Discussion

The plaintiff was born on October 9, 1980. He suffers from congenital bilateral hip dysplasia, with surgeries at age 10 and 16. Despite the fact that his hips have "bothered" him his entire life, the plaintiff's work history reflects that he has successfully performed "medium" and even "heavy" jobs. The plaintiff alleges that he became disabled in November of 2003, by his hip condition, osteoarthritic changes in his hips and low back, and poorly-controlled diabetes mellitus.

In his written decision, the ALJ acknowledged that "[t]he claimant states that prolonged standing, walking and sitting exacerbate his pain and this seems reasonable, given his history of hip pinning and osteoarthritic and degenerative changes [of the hips and lumbar spine]" (AR, p. 17). In November of 2005, x-rays of the plaintiff's hips and spine were taken. The ALJ characterized the hip x-ray as "significant" and acknowledged the following (AR, p. 16):

> An updated left-hip x-ray on November 5, 2005, again shows previous pinning and post-traumatic deforming of the left femoral head, with a healed fracture. There was some osteocytic spurring seen on the superior lip of the acetabulum as well as the lateral femoral head. Findings were interpreted as most likely post-traumatic degenerative osteoarthritis, although the joint space itself is maintained.

The ALJ characterized the spine x-ray as revealing only "mild" osteoarthritic changes (AR, p. 16).

The plaintiff also suffers from diabetes mellitus. At the administrative hearing on October 25, 2006, the plaintiff testified that he suffers from numbness of the last three fingers of both hands, which his treating physician, Gary James, told him was due to poor circulation caused by diabetes (AR, pp. 223-224). However, in August of 2006, Dr. James opined that the plaintiff has no "significant limitations in doing repetitive reaching, handling or fingering" and he would be able to engage in those types of activities "100%" of the time during an 8-hour workday (AR, p. 180). The plaintiff also testified that he experiences numbness in his feet and symptoms of lightheadedness and dizziness due to diabetes (AR, pp. 224 and 228). The plaintiff presents three numbered contentions upon judicial review.

The plaintiff's second contention is that "the Commissioner improperly determined that the plaintiff's impairment did not meet or equal the Listing [9.09(A)] for diabetes mellitus" (Docket Entry No. 7, p. 5). The burden of proof at the third step of the sequential evaluation process is upon the claimant. Listing 9.08 provides that the following medical condition is per-se disabling:

> **Diabetes mellitus.** With:
>
> A. Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C); or
>
> B. Acidosis occurring at least on the average of once every 2 months documented by appropriate blood chemical tests (pH or pCO2 or bicarbonate levels); or
>
> C. Retinitis proliferans; evaluate the visual impairment under the criteria in 2.02, 2.03, or 2.04.

Section 11.00C provides, in turn, as follows:

> C. Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combination,

frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

The specific medical requirements contemplated by Listing 9.08(A) are summarized in Social Security Claims and Procedures (5th Ed.) (updated November 2006), Harvey L. McCormick, § 8:123 as follows:

> 1. One possible effect of diabetes mellitus is "neuropathy." Neuropathy means that the disease is having an abnormal effect on nerves.
>
> 2. Diabetes mellitus can cause both motor neuropathy and sensory neuropathy. Motor neuropathy means that motor nerves are affected. These nerves allow a person to move their muscles, and without them no movement would be possible. Sensory neuropathy means that sensory nerves are affected. These nerves allow a person to "feel" such things as pain, temperature, and touch. Part A deals only with motor neuropathy ....
>
> 3. The most serious motor neuropathy caused by diabetes mellitus is that which affects the ability to use the arms, hands, or legs. So Social Security disability is most interested in how the neuropathy affects the claimant's ability to grasp with the hands and to walk.
>
> 4. Use of the legs is evaluated by "gait and station." Gait means walking, and station refers to the posture used in standing and walking.
>
> 5. Use of the arms and hands is evaluated by "gross and dexterous movements." Gross movements involves the ability to grasp large sized objects with normal or abnormal coordination and speed. Dexterous movements are fine movements, such as picking up small objects or writing.
>
> 6. "Two extremities" means that the neuropathy can affect both legs, both arms, or one arm and one leg. But one arm or one leg alone would not qualify.
>
> 7. The impairment caused by neuropathy must be sustained. It must be severe enough to be present continuously. Social Security disability must have enough information over a long enough period of time to be convinced that the neuropathy is not likely to improve. This usually requires at least several months of medical records, showing the severe neuropathy to be present.

The plaintiff argues that information contained in the consultative report of Rebecca Sweitzer, M.D., supports a conclusion that his condition satisfies Listing 9.08(A) (AR, pp. 132-137). Dr. Sweitzer examined the plaintiff at the request of the Commissioner in September of 2005. Dr. Sweitzer found that "the patient is able to pick up coins, grasp objects, button and unbutton, open doors, hold a pen and write, ... make a fist, ... touch thumb to all fingertips easily, ... handle objects [and] lift [not] greater than 25 pounds" (AR, p. 134). As noted above, the treating physician, Dr. James, opined that the plaintiff is able to reach, handle, and finger 100% of the workday (AR, p. 180).

Therefore, the only way the plaintiff can satisfy the Listing is to show that he has a <u>motor</u> neuropathy affecting his gate and station. The magistrate judge concludes that the plaintiff's allegation of numbness of the feet due to diabetes, even if fully credited, would establish only a <u>sensory</u> neuropathy. The evidence does reflect that the plaintiff suffers from an impairment affecting gait and station. However, the plaintiff has failed to show that this limitation is due to diabetic neuropathy as opposed to his hip impairment. Therefore, the plaintiff has failed to show that his diabetes satisfies the criteria of Listing 9.08.

The plaintiff's first numbered contention is that "the Commissioner erred in giving more weight to a non-examining physician opinion than to examining physician opinion" (Docket Entry No. 7, p. 4). Specifically, the plaintiff argues that the ALJ was required to give controlling weight to the treating physician, Dr. James. On August 28, 2006, Dr. James completed the Physical Residual Functional Capacity Questionnaire (AR, pp. 178-181). We have already noted, in connection with Listing 9.08, that Dr. James opined that the plaintiff does not suffers from an impairment affecting his ability to reach, handle, and finger. However, Dr. James also found,

8

among other things, as follows:

    1. The plaintiff can sit for less than 2 hours in an 8 hour working day.

    2. The plaintiff can stand/walk for less than 2 hours in an 8 hour working day.

    3. The plaintiff can lift no weight, ever.

    4. The plaintiff is likely to be absent from work as a result of his impairments or treatment more than four times a month.

The vocational expert (VE) testified that acceptance of these limitations would not permit any type of full-time work (AR, p. 250).

The regulations provide that under certain circumstances the "medical opinion" of a treating physician is entitled to controlling weight. See 20 C.F.R. § 416.927(d)(2). However, as a threshold matter, the court must consider whether Dr. James' disabling findings are properly classified as medical opinions based upon objective medical evidence as opposed to credibility opinions based upon acceptance of the patient's complaints of pain and other subjective symptoms. The magistrate judge submits that Dr. James' findings are of the latter sort inasmuch as Dr. James did not "know," in the sense of an objective medical fact, that, if properly motivated, the plaintiff would be unable to sit, stand and/or walk (in combination and at the plaintiff's option) for an eight hour working day, would be incapable of lifting any weight, would require being off work for more than four times a month, etc. Generally, any finding that is "dispositive of a case; i.e., that would direct the determination or decision of disability" is deemed to be an medical source opinion on an issue reserved to the Commissioner" and is entitled to no "special significance." 20 C.F.R. § 416.927(e). The undersigned concludes that Dr. James' disabling opinions were entitled to no special significance.

Alternatively, to the extent Dr. James' opinions are considered to be medical opinions, they were not entitled to controlling weight. A medical opinion from a treating source is entitled to controlling weight only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 416.927(d)(2).

Dr. James indicated that the plaintiff's hip impairment and diabetes are "reasonably consistent with the symptoms and functional limitations described in this evaluation" (AR, p. 179). However, Dr. James does not opine that the objective medical data confirm the severity of the alleged pain and other subjective symptoms and/or functional limitations assigned by Dr. James. In cases, like the present one, where the objective medical evidence does not confirm the severity of the alleged pain, the Commissioner will consider the medical and non-medical factors codified at 20 C.F.R. § 416.929(c)(3). "The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir., 1997). The magistrate judge concludes that the ALJ did not err in declining to defer to Dr. James' disabling opinions.

The plaintiff's third and final numbered contention is as follows (Docket Entry No. 7, p. 6):

[Social Security Ruling] 96-9p provides that an ability to stoop occasionally, i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A complete inability to stoop significantly erodes the unskilled sedentary occupational base and usually results in a finding that the individual is disabled. Id.

The plaintiff's reliance upon SSR 96-9p is unpersuasive because the ALJ found that the plaintiff is able to perform a limited range of "light" work. ALJ's Finding No. 4. Furthermore, even if the

plaintiff were restricted to "sedentary" work, the VE testified that a "no stooping" limitation would still allow for a significant number of jobs in the national economy (AR, p. 249). The rule identified by SSR 96-9p and relied upon by the plaintiff is only a general rule that applies in the absence of specific vocational testimony tailored to a claimant's specific limitations. SSR 96-9p repeatedly cautions that, in cases of doubt, the proper course of action is for the Commissioner to obtain vocational testimony tailored to the claimant's specific restrictions and that "consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping." In obtaining vocational testimony, the ALJ complied with SSR 96-9p.

## RECOMMENDATION

The magistrate judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the plaintiff's complaint be DISMISSED.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).